# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 6039 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Nearly four years ago, in April 2014, Gwendolyn Sanders filed applications for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and Disabled Widow's Benefits under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§416(i), 423,1382c(3)(A). (Administrative Record (R.) 301-310, 313-316). She claimed she was unable to work due to a host of problems: Addison's disease, moderate depression, hypothyroidism, pan-hypopituitarism, hepatitis C, migraine headaches, high blood pressure, and anxiety. (R. 339). Her applications made their way through the administrative process over the course of a little over three years, with her claim for benefits being denied at the initial and reconsideration levels, by an administrative law judge, and, finally, at the appeals council level on June 19, 2017. (R. 1-4). Ms. Sanders filed suit under 42 U.S.C. §405(g) seeking review of the denial of her claims for benefits, and it is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981.

### I.

Ms. Sanders had previously worked for over 30 years as a maintenance administrator for the telephone company. (R. 340). That job required her to work on a computer, monitor technicians,

and handle phone calls. She spent most of her day sitting, but did have to walk around a large office for 1 or 2 hours each day. (R. 340-341, 348). She never had to lift more than 10 pounds. (R. 341, 348).

But, in 2009, Ms. Sanders was fired for tardiness. (R. 48). At her administrative hearing, she explained that, at that time, supervisors had changed quite a bit and no one knew her or knew her history. (R. 48). Her sister had recently died, she said, and she was under stress. (R. 49). The location of her office changed and it took her longer to get to work – at least an hour and a half every day. (R. 49, 57-58). Morever, driving to the new location, she would have to stop on the way and be sick to her stomach or go to the bathroom. (R. 49). Ms. Sanders explained that this was due to an issue with her pituitary gland that she had dealt with since 1980, but that had been exacerbated by the stress of her troubles at work and her sister's death. (R. 50). The condition was diagnosed as panhypopituitarism. (R. 876). The condition didn't affect her while she was at her desk, however; it was the motion of the car that upset her stomach. (R. 62-63).

Ms. Sanders said she didn't look for another job with an easier commute because her skillset was unique to the phone company, and she had put in a lot of time with the company and wanted to retire with them. (R. 53). But with her health issues, she could not get to work on time at the new facility, even if she left early. (R. 55).

Following the hearing, the ALJ reviewed the voluminous medical record – nearly 700 pages, which the ALJ spent 12 single-spaced pages summarizing – and determined that Ms. Sanders was not disabled. The ALJ did find that she had several severe impairments: adrenal gland disorders with thyroid and pituitary disorders, hepatitis C, and left knee dysfunction. (R. 13). Ms. Sanders had a number of other impairments that the ALJ felt were not severe: migraines, low back pain,

2

degenerative disc disease of the cervical spine, acute renal failure, hypertension, obesity, and depression/anxiety disorder. (R. 14-15). The ALJ found that Ms. Sanders' mental impairments left her with mild restrictions on activitites of daily living and concentration, persistence and pace, but no limitations on social functioning. (R. 16).

The ALJ waded through the several medical opinions in the record and didn't think much of them. He gave partial weight to the state DDS doctors' opinion that Ms. Sanders had no severe mental impairment, and little weight to their opinion that she had no medically determinable mental impairment. (R. 18). He gave some weight to the opinion of consultative examiner Dr. Gregory Rudolph that Ms. Sanders' prognosis was limited because it was vague. (R. 19). He gave little weight to the opinion of examining psychologist Dr. Karina Bortnik that Ms. Sanders was disabled because it was vague and disability is a matter reserved to the Commissioner. (R. 19). The opinion of Dr. Kang-Yann Lin was assigned only partial weight because portions were not consistent with the record. (R. 20). Finally, the ALJ gave limited weight to the opinion of treating psychiatrist Dr. Timothy T'so because it was too remote in time. (R. 20).

The ALJ went on to find that Ms. Sanders could perform sedentary work except, lifting/carrying 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours out of 8 hours; standing for 2 hours out of 8 hours; walking for 2 hours out of 8 hours; pushing and pulling as much as the individual can lift/carry; never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; never being exposed to unprotected heights or moving mechanical parts; and never operating a motor vehicle. (R. 22). He found that Ms. Sanders' allegation regarding the intensity, persistence and limiting effects of her impairments were not entirely consistent with the medical record. (R. 23). Given Ms Sanders'

capacity for a limited range of sedentary work, the ALJ relied on the testimony of the vocational expert to determine that Ms. Sanders could perform her past sedentary, semi-skilled work as a maintenance administrator. (R. 26). Accordingly, the ALJ concluded that Ms. Sanders was not disabled and not entitled to benefits. (R. 26-27).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997). *See also Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010); we cannot uphold a decision by an administrative agency, any more than we can uphold

*Lomax v. Astrue*, 2010 WL 337654, at *7 (N.D. Ill. 2010(discussing the meaning and origin of the phrase). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). *See also discussion in Lomax v. Astrue*, 2010 WL 337654, at *7.

### III.

As already noted, the record in this case is, like most Social Security disability cases, massive and will only be discussed insofar as it pertains to various points that need to be made about the ALJ's decision. Indeed, the parties point to barely a dozen pages of the 650 pages of medical evidence as pertinent to their positions. [ Dkt. # 17, at 10-18; Dkt. #18, at 3-6]. Suffice it to say that Ms. Sanders suffers from a constellation of medical and psychological problems. But, the main issue with the ALJ's decision is that the ALJ failed to adequately account for the severity of her mental limitations and consider them in combination with her many other impairments in determining her residual functional capacity. As a result, this case must be remanded for further proceedings.

The ALJ determined that Ms. Sanders' mental impairment caused her only mild limitations in daily living and maintaining concentration, persistence, and pace, and no limitation in social functioning. As a result, he concluded her mental impairment was not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1); *Davis v. Berryhill*, 2018 WL 367808, at *3 (7th Cir. 2018)(proper

5

evaluation of mental impairment as non-severe where the ALJ found plaintiff had only mild limitations in the areas of daily living, social functioning, and concentration); *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008)("If the ALJ rates the first three functional areas as none or mild and the fourth area as none, then generally the impairment is not considered severe."). But the plaintiff argues that the ALJ had to include the mild limitations in his RFC finding.

The Commissioner submits that, because the ALJ found that plaintiff's mental impairment was non-severe, the ALJ didn't have to account for it in his RFC finding. According to the Commissioner, when the ALJ determined that the plaintiff's mental impairment was not severe, that meant, by definition, that it did not significantly limit her ability to perform basic work activities. [Dkt. #18, at 7]. That much is true. *See, e.g., Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016)(impairment is "not severe" only if it is "a slight abnormality" that has "no more than a minimal effect on the ability to do basic work activities."). But the Commissioner goes on to argue, erroneously we think, that as there was no *significant* limitation, the ALJ didn't have to include *any* limitations in his RFC finding. [Dkt. #18, at 7].

The Commissioner's own regulations clearly dictate that an ALJ has to consider the effects of even non-severe impairments on a plaintiff's overall capacity to work. 20 C.F.R. § 404.1545(a)(2)(clearly provides that "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . ."). And, in case after case, the Seventh Circuit takes ALJs to task, and mandates a remand, when ALJs fail to do so. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)(ALJ improperly failed to consider non-severe headaches in combination with plaintiff's other impairments); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014)(". . . the ALJ must consider all

of the relevant evidence in the record, 'even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling.'"); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014)(improper for ALJ to "not consider the impairments that she had previously ruled singly non-severe, . . . These, too, should have been considered in concert with [plaintiff's] other impairments to determine their collective effect on her ability to work.").

This problem is not a matter of a disagreement over how the ALJ weighed evidence, as the Commissioner's response seems to suggest. Here, the ALJ actually found that the evidence showed that plaintiff's mental impairment resulted in at least mild limitations in two areas of functioning: daily activities and concentration, persistence, and pace. (R. 16, 18). But in his RFC finding, the ALJ made no mention of any type of mental or concentration limitation, mild or otherwise. (R. 22). All facets of the RFC finding deal with either physical limitations — lifting walking, climbing, etc. – or environmental limitations. (R. 22).

The ALJ's tack also runs afoul of the line of Seventh Circuit cases that take ALJs to task for failing to account for concentration issues in residual functional capacity findings and hypotheticals to vocational experts. See, e.g., *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017); *Varga v. Colvin*, 794 F.3d 809, 813–14 (7th Cir. 2015); *Yurt,* 758 F.3d at 857. At Ms. Sanders's hearing, the vocational expert testified that, without any mental restrictions, a person could perform Ms. Sanders's past work; with them, she could not. (R. 96). So, mental restrictions are salient to the ultimate issues here; but because the ALJ didn't alert the vocational expert to Ms. Sanders' mild

restrictions on concentration, persistence, and pace, we cannot know if she could perform her past work despite them.

And here, Ms. Sanders's ability to go back to her past work is the be-all and end-all. At the time of the ALJ's decision, she was 61 years old. (R. 132). As such, she was "closely approaching retirement age" and was at least of "advanced age" for much of the pertinent period. Because of those factors, just about the only way the ALJ could find Ms Sanders – whom he limited to sedentary work – not disabled is if he determined she could still do her past work. *See* 20 C.F.R. § 404.1568(d)(4).

So, although this case needs to be remanded for the foregoing reasons, it is worthwhile to make a couple of other points about the ALJ's decision. First, based on the medical evidence and her activities, the ALJ rejected Ms. Sanders's allegations regarding the effects of her symptoms. (R. 22-25). He thought that her allegations of fatigue and dizziness were undermined by her ability to participate in the hour and a half administrative hearing, and pay bills, and count change. (R. 24). The ALJ was also impressed, quite illogically, by the fact that Ms. Sanders was able to dress and shower and feed herself. (R. 24). That's not much in the way of activity. Indeed, unless an applicant is bed-ridden, every applicant can engage in such minimal activities. Without more from the ALJ, it's hard to fathom why being able to eat or write out a few checks once a month casts any doubt on allegations of dizziness and fatigue. Moreover, Ms. Sanders indicated that even these activities were challenging due to fatigue and dizziness. (R. 24). "An ALJ cannot disregard a claimant's limitations in performing" daily activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016). And, without any explanation from the ALJ, it is far from self-evident that being able to occasionally prepare very simple meals like cereal or sandwiches – and

8

doing so slowly (R. 362) somehow calls into question allegations of weakness and lack of energy. (R. 24). *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017)("But the ALJ did not explain why doing these household chores was inconsistent with [plaintiff's] description of her pain and limited mobility. Nor is any inconsistency obvious . . . ."). That leaves only the medical evidence as a rational for rejecting Ms. Sanders's allegations and that, alone, cannot provide the basis for a finding that those allegations are not credible. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). Again, a remand is necessary to remedy this.

There are also some concerns about the ALJ's treatment of the medical opinions in this case. For example, he rejected the opinion of Dr. Karina Bortnik because the issue of disability was a matter reserved for the Commissioner. But, the Seventh Circuit has explained that:

> That isn't true. What is true is that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored.

*Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). The ALJ also called her opinion "vague" – he dismissed Dr. Rudolph's opinion as vague as well, and yet pointed to Dr. Rudolph's "vague" report as undermining Dr. Bortnik's "vague" report. (R. 19-20). That line of reasoning is difficult to follow, and, moreover, it should be noted that Dr. Bortnik's report is a detailed 5-page summary of results of two tests and an interview. (R. 697-701). The ALJ might disagree with it, but it's hardly "vague." Moreover, the ALJ gave limited weight, if any, to the opinions of Drs. Lin and Bortnik because they were apparently based on Ms. Sanders' allegations. (R. 20). "But all findings in psychiatric notes must be considered, even if they were based on the patient's own account of her

mental symptoms." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018); *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015)("But psychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings—a position we rejected in *Adaire v. Colvin,* 778 F.3d 685, 688 (7th Cir. 2015)."). The ALJ's assessment of the medical opinions in this case tends to unravel upon scrutiny, and that is another reason for a remand.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for remand is GRANTED, and the defendant's motion for an affirmance of the ALJ's decision is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/23/18